UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

RENE G. MYLES, JR.,

     Plaintiff,

v.                                   Case No. 1:25cv176-MW-HTC

N. NELSON, et al.,

     Defendants.

_____/

<u>REPORT AND RECOMMENDATION</u>

Plaintiff Rene G. Myles, Jr., a prisoner proceeding *pro se* and *in forma pauperis*, has filed a second amended complaint under 42 U.S.C. § 1983 alleging the Defendants violated the Eighth Amendment by placing him on property restriction for 72 hours and denying him medical care. Doc. 14. The Court has advised Myles of the legal standards applicable to his claims (Docs. 5 & 11) and given him two opportunities to amend his complaint to state a claim (Docs. 9 & 11). Nevertheless, the undersigned concludes the second amended complaint continues to fail to state a claim. Thus, this case should be DISMISSED WITH PREJUDICE.[1]

---

[1] As the District Judge noted in his July, 22, 2025 Order, the Court will not allow Myles "unlimited opportunities to attempt to state a claim." Doc. 9 at 2.

## I.    Background

Myles sues two employees at Cross City Correctional Institution, Officer N. Nelson and Sergeant B. Thagard.  His second amended complaint contains the following allegations.

At 10:30 a.m. to 11:00 a.m. on May 3, 2025, Nelson and Thagard were bringing Myles and other inmates in from recreation.  Nelson and Thagard placed Myles in the shower stall and ordered him to submit to a strip search.  As Nelson conducted the strip search, Thagard searched Myles's cell and told him he was being placed on property restriction.  When Myles asked why, Thagard said it was because he had two torn sheets and an obstructed ventilation system.

Myles gave Nelson all his clothes except his boxers and socks.  Nelson and Thagard: (1) removed all the property from Myles's cell, including his mattress, pillow, sheets, and blanket; and (2) placed Myles and his cellmate back in their cell. Myles asked why the officers were harassing him.  Thagard, with a smile on his face, said "I'm doing my job."  Nelson also smiled and said, "we have to make an example out of one of you guys or everyone will do what they want."

Nelson and Thagard left Myles's cell.  About ten minutes later, Nelson was conducting a security check and Myles asked him to provide the real reason for the property restriction.  Nelson replied, "because your roommate was high from

smoking." When Myles asked "what does that have to do with me," Nelson said, "y'all are in the room together so you both wear it."

Later that same day, Thagard conducted a security check. Myles asked Thagard if he could get his "mattress and pillow at least because [he] didn't do anything." Thagard said no and asked Myles "how does that concrete feel?" Myles told Thagard that he had a "medical emergency," but Thagard "denied [him]."

On the morning of May 4, Nelson conducted a security check. Myles asked for medical attention but Nelson "denied [him]." About an hour later, a nurse conducted a wellness check. Myles asked the nurse for medical attention, "but she denied [him] and told [him] to put in a sick-call." Myles submitted a sick call request later that day, but no one responded or processed it.

Myles received a disciplinary report ("DR") for destruction of state property. However, the DR was thrown out because Myles had evidence showing he received the two torn sheets from the laundry and a cell inspection sheet was never filled out.

Myles was on property restriction for a total of 72 hours. During that time, he had to sleep on a concrete slab; it "was hard to sleep" and his back, neck, shoulders, and knees were in pain. Myles also maintains his cell was below 60 degrees and he "was cold to the point [he] couldn't sleep." He says he "suffered from PTSD" and was "stressed from mental anguish" due to the conditions.

Based on the foregoing, Myles alleges Nelson and Thagard violated the Eighth Amendment by subjecting him to cruel and unusual punishment.[2]  As relief, he seeks damages.

## II.    Legal Standard

Because Myles is a prisoner proceeding *in forma pauperis* and seeking relief from government employees, the Court must dismiss his second amended complaint, or any portion thereof, if it determines it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).  To state a claim, Myles must plead factual content which allows the Court to draw the reasonable inference the Defendant is liable for the misconduct alleged.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   The Court must liberally construe *pro se* allegations, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), but conclusory allegations and legal conclusions couched as factual allegations are not entitled to a presumption of truth.  *Iqbal*, 556 U.S. at 681; *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

---

[2] The second amended complaint also alleges the Defendants violated the Fourteenth Amendment by exhibiting deliberate indifference.  *See* Doc. 14 at 10-12 (Claims 6-10, 12-14).  However, because Myles is a convicted prisoner, the Fourteenth Amendment does not apply to his deliberate indifference claims.  *See Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) ("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners.").  Thus, Myles's Fourteenth Amendment claims will be construed as Eighth Amendment claims.

## III.   Discussion

Although Myles has alleged a few new facts in the second amended complaint, the crux of his claims, which the undersigned previously advised him were deficient, remain the same.  Namely, the allegations continue to fail to establish the elements of a deliberate indifference claim under the Eighth Amendment.

### A.   Deliberate Indifference Standard

The Eighth Amendment requires prison officials to provide adequate food, clothing, shelter, and medical care; but the Constitution does not mandate comfortable prisons.  *Alfred v. Bryant*, 378 F. App'x 977, 979 (11th Cir. 2010).  Challenges to an inmate's conditions of confinement are governed by a deliberate indifference standard.  *Id.*

"To prevail on a claim of deliberate indifference, plaintiffs 'must satisfy both an objective and a subjective inquiry' and must establish a 'necessary causal link' between the challenged conduct and their injuries."  *Stalley v. Cumbie*, 124 F.4th 1273, 1283 (11th Cir. 2024) (citations omitted).  The objective inquiry asks whether the plaintiff "suffered a deprivation that was, 'objectively, sufficiently serious.'"  *Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  The prisoner "must show that extreme conditions created an unreasonable risk—one that society chooses not to tolerate—of serious damage to the detainee's future health or safety."  *Ellis v. Pierce Cnty.,*

*Ga.*, 415 F. App'x 215, 217 (11th Cir. 2011) (cleaned up and citations omitted); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992) ("[E]xtreme deprivations are required to make out a conditions-of-confinement claim."). The subjective inquiry requires a plaintiff to demonstrate the defendant exhibited deliberate indifference; to do so, the plaintiff must show the defendant: "(1) had subjective knowledge of a risk of serious harm, (2) disregarded that risk, and (3) engaged in conduct that amounts to subjective recklessness" under criminal law. *Stalley*, 124 F.4th at 1283.

As discussed below, the allegations in the second amended complaint do not establish either the objective or subjective component of a deliberate indifference claim.

### B.    Myles has not stated a conditions-of-confinement claim.

Myles complains of the following conditions: (1) being without his property for 72 hours; (2) being in a cell where the temperature at some points was below 60 degrees; and (3) having to sleep on a concrete slab. According to Myles, these conditions made it "hard to sleep" and caused pain.[3]   However, as the Court previously told Myles, "[A] prisoner's mere discomfort, without more, does not offend the Eighth Amendment." *Chandler v. Crosby*, 379 F.3d 1278, 1295 (11th Cir. 2004); *see also Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) ("While

---

[3] Despite having two opportunities to amend the complaint, Myles has not alleged facts showing how far below 60 degrees the temperature went or how long the temperature was below 60 degrees.

the temperature in extended lockdown may be uncomfortable, that alone cannot support a finding that the plaintiff was subjected to cruel and unusual punishment in violation of the Eighth Amendment."); *Faunce v. Gomez*, 163 F.3d 605 (9th Cir. 1998) ("Faunce's complaints-that the 60-watt bulb was insufficient lighting, the food was tasteless and cold, the mattress was uncomfortable, the bedding was insufficient, the toothbrush was too short, the 50-60° temperature of the cell was too cold, and the contact visits were lacking-do not constitute a deprivation of basic human needs.").[4]  Regardless, even assuming spending 72 hours in a cold cell without property is sufficient to meet the objective component of a deliberate indifference claim, Myles has not alleged facts to support the subjective component.

As the Court told Myles in its August 19, 2025 Order, to state a deliberate indifference claim, he must allege facts showing the Defendants were aware he faced a substantial risk of serious harm.  Doc. 11 at 4, 6.  Myles, however, still has not done so.  While Myles alleges Nelson and Thagard placed him on property

---

[4] *See also, Thomas v. Rodgers*, 2013 WL 6017327 (M.D. Fla. Nov. 13, 2013) (concluding "thirty-six hour exposure to cold temperatures is not the sort of extreme condition that violates contemporary standards of decency"); *Hernandez v. Fla. Dep't of Corr.*, 281 F. App'x 862, 866 (11th Cir. 2008) (exposure to winter temperatures such as they are in Northern Florida for two months not considered harmful to inmate's health); *Alfred*, 378 F. App'x at 980 ("Objectively speaking, sleeping on a steel bed without a mattress for eighteen days, though uncomfortable, is not so extreme as to violate contemporary standards of decency."); *Askew v. Fairman*, 880 F. Supp. 557, 562 (N.D. Ill. 1995) (holding inmate alleging he was forced to sleep on cold floor without a mattress for almost a year failed to state a claim because "the conditions, although perhaps unsanitary and uncomfortable, do not deprive plaintiff of the minimal civilized measure of life necessities").

restriction, he does not allege they were aware of the temperature inside his cell, the effect of the temperature, or the effect of sleeping on the concrete slab. *See Farmer*, 511 U.S. at 837 ("the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"); *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008) (noting "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference" and "[e]ach individual Defendant must be judged separately and on the basis of what that person knows").

Myles asserts he asked Thagard for his mattress and pillow on May 3, but Thagard refused and said, "how does that concrete feel." Doc. 14 at 8. Notably, Myles does not contend that he asked for clothes or a blanket. Myles does not allege he told the Defendants the cell was too cold or that he could not sleep because of the temperature inside the cell. Also, Myles has not alleged any facts showing the Defendants were subjectively aware the temperature inside the cell at any time was "below 60 degrees" or "cold." And although Myles asked for his mattress and pillow, he did not tell Thagard he needed the mattress and pillow because he was cold, in pain, or otherwise at a substantial risk of serious harm; instead, he told Thagard he wanted those items back "because [he] didn't do anything." *See Bennett v. Chitwood*, 519 F. App'x 569, 574-75 (11th Cir. 2013) (finding plaintiff failed to satisfy the subjective component of the deliberate indifference test because nothing

indicated "he notified jail officials specifically that he was excessively cold" and "his complaints were about not having clothes or about 'the situation' generally"); *see also, Woodson v. Whitehead*, 673 F. App'x 931, 932 (11th Cir. 2016) ("[T]he fact that Warden Palmer saw the conditions in which Woodson was held during his disciplinary confinement is not enough to show that any of the defendants believed Woodson's health or safety to be at risk. Woodson failed to show that any of the defendants had subjective knowledge of a substantial risk of serious harm to Woodson."); *Krug v. Kastner*, 661 F. App'x 507, 508-09 (10th Cir. 2016) (finding plaintiff failed to meet subjective element where "[n]o allegations in his pleadings would support that the warden knew that the prison's temperature would impact [plaintiff's] ability to sleep at night"). Thus, because Myles's factual allegations do not suggest the Defendants were subjectively aware the conditions in his cell posed a substantial risk of serious harm, he has failed to state an Eighth Amendment claim against them.

**C.    Myles has not stated an inadequate medical treatment claim.**

Similarly, the factual allegations related to Myles's requests for medical attention are not sufficient to support an Eighth Amendment claim. First, Myles's allegations do not show he had a serious medical need. He complains that he experienced neck, back, shoulder, and knee pain due to sleeping on a concrete slab. However, these generalized complaints of pain do not demonstrate Myles's

condition was such that, if left unattended, it posed a substantial risk of serious harm. *See Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (describing a serious medical need as one that, if left unattended, poses a substantial risk of serious harm); *see also Burley v. Upton*, 257 F. App'x 207, 210 (11th Cir. 2007) ("lower back pain is not the type of serious condition this circuit requires" to establish a "serious medical need").

Furthermore, Myles's allegations do not establish the Defendants were aware of his ailments or their severity. Myles alleges he told Thagard on May 3 that he had a medical emergency and he asked Nelson on May 4 for medical attention. Doc. 14 at 8. However, because Myles never alleges he told either Thagard or Nelson why he was seeking medical attention, and conditions like back pain are not readily apparent, the allegations do not suggest Thagard and Nelson were subjectively aware their refusal to provide Myles immediate medical attention created a substantial risk of serious harm to him.[5] *See Wade*, 106 F.4th at 1262 (explaining the plaintiff "must show that the defendant was actually, subjectively aware that his own conduct

---

[5] Based on the timeline presented in the second amended complaint, Myles told Thagard he had a medical emergency within about twelve hours of being placed on property restriction. Also, a nurse performed a wellness check about an hour after Myles spoke with Nelson and concluded Myles did not require immediate medical attention. *See Lynch v. Jackson*, 478 F. App'x 613, 619 (11th Cir. 2012) ("Prison officials who rely on medical personnel for the clinical determinations lack the requisite knowledge for deliberate indifference, absent evidence that clinical determination were unreliable.").

caused a substantial risk of serious harm to the plaintiff"). Accordingly, Myles has failed to state a claim against the Defendants for inadequate medical attention.[6]

## IV. Conclusion

On two occasions, the Court has advised Myles of the legal standards applicable to his claims and given him an opportunity to file a complaint that states a viable claim. Myles's second amended complaint, however, continues to fail state a claim—namely, his allegations do not support a deliberate indifference claim. Because Myles has failed to cure the deficiencies identified in his prior complaints through amendment, this case should be dismissed with prejudice for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1). *See Brennan v. Comm'r, Ala. Dep't of Corr.*, 626 F. App'x 939, 945-46 (11th Cir. 2015) ("A *pro se* litigant must be given at least one opportunity to amend his complaint before the court dismisses the action with prejudice if it appears that a more carefully drafted pleading would state a claim upon which relief could be granted.").

Accordingly, it is RECOMMENDED:

1.    That this case be DISMISSED WITH PREJUDICE under 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1) due to Myles's failure to state a claim on which relief may be granted.

---

[6] Myles also alleges some of the comments Nelson and Thagard made amounted to cruel and unusual punishment. However, "verbal abuse alone is insufficient to state a constitutional claim." *Hernandez v. Fla. Dep't of Corr.*, 281 F. App'x 862, 866 (11th Cir. 2008).

2.    That the clerk close the file.

At Pensacola, Florida, this 9th day of October, 2025.

/s/ Hope Thai Cannon

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1.